[No. B201134. Second Dist., Div. Four. July 2, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
VICKI LYNN MILLER, Defendant and Appellant.

654

**COUNSEL**

Laura S. Kelly, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Victoria B. Wilson and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MANELLA, J.**—Appellant Vicki Lynn Miller was charged and convicted of multiple counts, including hit-and-run driving, assault with a deadly weapon, evading a peace officer and driving with a suspended license. The charges derived from a series of incidents on February 2, 2006, in which she (1) left the scene of an accident without exchanging information with the other driver; (2) drove her car on a beach bicycle path, colliding with and seriously injuring a pedestrian; and (3) ignored the fire department employee who was

following her in an attempt to pull her over. On appeal, she contends that the trial court improperly instructed the jury on the elements of assault, and that the evidence was insufficient to support a finding that the person from whom she fled met the statutory definition of peace officer. In a supplemental brief, she points out that the trial court failed to conduct a court trial on the allegation that she suffered a prior conviction for driving with a suspended license, but nonetheless imposed a sentence dependent on the truth of the allegation. We agree with her contentions concerning instructional error and sufficiency of the evidence and agree that the sentence imposed for driving with a suspended license was legally unauthorized. Accordingly, we reverse appellant's convictions for evading a peace officer and for assault, reverse her sentence for driving with a suspended license, and remand for further hearing.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Information*

In a five-count information, appellant was charged with driving under the influence (DUI), causing injury (Veh. Code, § 23153, subd. (a); count one), driving with a revoked or suspended license (Veh. Code, 14601, subd. (a); count two), misdemeanor hit and run (Veh. Code, § 20002, subd. (a); count three), assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1); count four), and evading a peace officer, causing injury (Veh. Code, § 2800.3, subd. (a); count five). With respect to count two, it was further alleged that appellant had suffered a prior conviction for driving with a suspended license under Vehicle Code section 14601.1 in July 2005.

### B. *Evidence at Trial*

On February 2, 2006, at approximately 3:00 p.m., Glenn Fong was making a left turn onto First Street from Alamitos Avenue in Long Beach. His car was struck on the passenger side by a car being driven by appellant. Fong and appellant pulled their vehicles into a nearby gas station. Appellant said she did not want to get their insurance companies involved and offered to pay Fong $100. Fong rejected the offer. Fong went back to his car to get

---

[1] Appellant also contends the court was required to stay the sentence on the evading charge under Penal Code section 654. Because we conclude that her conviction must be overturned for other reasons, we do not reach this contention.

insurance and vehicle information and believed appellant was doing the same. However, appellant just sat in her car. After approximately 10 minutes, Fong walked up to appellant's car to continue the exchange of information. Appellant was shivering and seemed agitated. She said: "I don't remember who you are, I don't know what I'm doing here." Fong told her he was going to call the police. Appellant backed her vehicle into Fong's car, which was partially blocking the exit, and drove away. Fong took down her license plate number and called the police.

On the day of the accident, Robert Hamilton was working at the lifeguard headquarters on East Ocean Boulevard in Long Beach. Hamilton worked for "the City of Long Beach Fire Department" and "the lifeguards." He first stated his job title was "rescue boat operator" and then corrected himself and said it was "harbor patrolman." In that position, he "work[ed] on the beach," explaining that "mostly, I'm a rescue boat operator." He had the authority to issue citations, detain individuals and make arrests. On the day of the incident, Hamilton was wearing a long-sleeved white polo shirt with the fire department insignia and his name on it, red shorts and thongs.

At 3:30 p.m., Hamilton saw appellant drive her vehicle down the beach access road, cross the sand, and turn onto the bicycle path. Hamilton got into his lifeguard truck and followed appellant's vehicle, staying to its right or left in order to keep his truck off the path. Hamilton's truck was red and had Long Beach Fire Department rescue markings on it. It was equipped with a light bar on top and a siren. He activated both and also used the truck's air horn and public address system in his attempt to stop appellant and to warn people to get off the path. Appellant, who had been going 25 to 35 miles per hour from the time she entered the bicycle path, did not stop or change her speed.

Hamilton testified there were "a lot of people" on the bicycle path. He saw people jumping or diving off the path to get out of appellant's way. As Hamilton described it, "mothers were literally grabbing their children and jumping off the bike path." He observed an elderly man climb up the bluff that bordered the path as appellant approached. Appellant did not brake or slow down. At one point, the bicycle path intersected a parking lot, giving appellant an opportunity to return to the road, but she continued on the path.

Shortly after appellant drove through the parking lot and back onto the bicycle path, her car hit Erick Martinez, who was jogging on the path, wearing headphones.[2] Martinez fell backwards onto the hood of appellant's vehicle, and then back onto the bicycle path. The tires on appellant's vehicle rolled over his left side. Appellant drove her car a little farther before stopping. A bystander grabbed the keys. Upon emerging from her vehicle, appellant said: "I didn't see him." Hamilton detained her and called the police.

Jeffrey Shurtleff, the police officer who arrived to arrest appellant, testified she appeared disoriented. Some of her statements did not make sense and her speech was slurred. She said she did not know why she was on the bike path. Officer Shurtleff ran appellant's driver's license through his computer and learned it had been suspended or revoked. Appellant admitted knowing about the suspension or revocation.

Officer Eric Mifflin, who conducted a field sobriety test, observed that appellant's eyes were jaundiced and she was shivering violently. Her breath gave off a chemical odor. Her eyes "bounce[d]" when she tried to track an object, a condition called "nystagmus," which can be caused by substance abuse. According to Officer Mifflin, appellant seemed incoherent when he first confronted her and "was kind of dazing in and out of a semiconscious state." He concluded that "[s]he wasn't sure where she was or what had happened." Because of her physical condition, he decided to take her to the station to continue the sobriety testing. Once there, appellant failed a number of tests, including a balance test and a walking test. She admitted having drunk a half pint of vodka the previous night, but the breathalyzer did not detect any alcohol. The police nurse was unable to draw blood for testing.

Martinez was taken to a hospital and released within a few hours. At the time of trial, a year after the incident, he still felt pain in his ankle, neck and lower back when he tried to jog.

The defense called Dr. Angela LaMotte, appellant's primary care physician. Dr. LaMotte testified that nystagmus could also be caused by virus or injury. She further testified that appellant suffered from a condition, "labrynthitis," that affected her inner ear and could cause intermittent dizziness or vertigo.

---

[2] Hamilton testified that Martinez "looked back and . . . froze"; however, Martinez testified he was looking forward and did not see the vehicle, even after it hit him.

C. *Relevant Argument*

The prosecutor argued that the fact that appellant struck Martinez with her car while driving on the bicycle path meant she was guilty of assault. He did not discuss the requisite mental state, but contended that the incoherent behavior attested to by Officer Mifflin was evidence of voluntary intoxication. For purposes of the evading charge contained in count five, he argued that Hamilton had peace officer status because "[h]e's part of the harbor or patrol unit" and had "certain authority to detain individuals, to write citations."

Based on Officer Mifflin's testimony that appellant was, in the immediate aftermath of the incident, incoherent and unsure where she was or what had happened, defense counsel contended appellant had not intentionally hit Martinez. He argued she was "not right" mentally at the time and said if the police had taken her for a medical examination, "we [might] know today what was going on."

D. *Verdict and Sentencing*

The jury found appellant guilty on counts two through five, but was unable to reach a verdict on count one (DUI). Count one was dismissed.

Appellant waived her right to jury trial on the alleged prior. The court set trial on the driving with a suspended license prior for the same day as sentencing, but failed to conduct a hearing, receive any evidence or make any findings concerning the alleged prior.

The court chose count four (assault) as the base term, and sentenced appellant to the upper term of four years, adding three years for great bodily injury under Penal Code section 12022.7, subdivision (a). In addition, appellant was sentenced to serve a consecutive sentence of one year eight months (one-third the midterm) for count five (evading an officer, causing injury); 365 days in county jail for count two (driving with a suspended license); and a consecutive sentence of six months in county jail for count three (misdemeanor hit and run). The court selected the upper term for count four because "the victim was particularly vulnerable [in] that he was jogging on the path, his back was to the defendant, he had head phones on, he couldn't hear or see that a car was coming upon him, and he certainly would not have expected a car being driven on the jogging path of a beach." The

court stated that the sentence on count three (hit and run) would be consecutive because "the crime of this offense was one of great violence."

## DISCUSSION

### A. *Court's Response to Jury Question*

#### 1. *Background*

Appellant was charged in count four with assault with a deadly weapon. The charge named Martinez as the victim. Pursuant to CALJIC No. 9.00, the jury was instructed: "In order to prove an assault, each of the following elements must be proved: 1. A person willfully committed an act which by its nature would probably and directly result in the application of physical force on another person; [¶] 2. The person committing the act was aware of facts that would lead a reasonable person to realize that as a direct, natural and probable result of this act that [*sic*] physical force would be applied to another person; and [¶] 3. At the time the act was committed, the person committing the act had the present ability to apply physical force to the person of another."

During deliberations, the jury sent the following written question to the court: "Regarding count 4, element 2, it states [']was the person aware[,'] etc. Is there a temporal portion to this count? At what point in time was the defendant charged with this count? Which assault is this count referring to?" After consulting with counsel telephonically, the court replied as follows: "1. There is no 'awareness' element. [¶] 2. There is no 'temporal' element. [¶] 3. This count refers to the same incident which comprises the event charged in Count I."[3] The court informed appellant's counsel telephonically of its proposed response, and counsel raised no objection. On appeal, appellant contends the court's response to the jury constituted instructional error which relieved the prosecution of proving each element of the assault beyond a reasonable doubt and which, therefore, was not waived by trial counsel's failure to object.[4] For the reasons set forth below, we conclude the trial court's statement that "there is no 'awareness' element" constituted instructional error, and the error was not harmless.

---

[3] Count one charged that appellant drove while under the influence and proximately caused bodily injury to Martinez.

[4] See, e.g., *People v. Hudson* (2006) 38 Cal.4th 1002, 1011–1012 [44 Cal.Rptr.3d 632, 136 P.3d 168] (general rule that a party may not complain about an instruction on appeal unless he or she requested appropriate clarifying or amplifying language "does not apply when . . . the trial court gives an instruction that is an incorrect statement of the law"); *People v. Hillhouse* (2002) 27 Cal.4th 469, 503 [117 Cal.Rptr.2d 45, 40 P.3d 754] ("Instructions regarding the elements of the crime affect the substantial rights of the defendant, thus requiring no objection for appellate review."); *People v. Tillotson* (2007) 157 Cal.App.4th 517, 538 [69

## 2. *Elements of Assault*

█ "The Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged . . . ." (*United States v. Gaudin* (1995) 515 U.S. 506, 511 [132 L.Ed.2d 444, 115 S.Ct. 2310].) "A trial judge is required to explain the law correctly to the jury so that it may 'apply the law to the facts,' [citation], and determine the defendant's guilt as to every element of the crime with which he is charged [citation]." (*Ho v. Carey* (9th Cir. 2003) 332 F.3d 587, 593, quoting *United States v. Gaudin, supra,* 515 U.S. at p. 514.) It is error of constitutional dimension for the court to remove an essential element of a crime from the jury's consideration by its response to a question posed during deliberations. (*People v. Sakarias* (2000) 22 Cal.4th 596, 623–625 [94 Cal.Rptr.2d 17, 995 P.2d 152].) Accordingly, we address whether the trial court's statement to the jury withdrew an essential element of the assault charge from the jury's consideration.

█ Concerning the mental state for assault, the California Supreme Court has long held that to establish the crime of assault, the prosecution need not prove the defendant specifically intended to cause injury. Rather, the defendant need only have "the general intent to willfully commit an act the direct, natural and probable consequences of which[,] if successfully completed[,] would be the injury to another." (*People v. Rocha* (1971) 3 Cal.3d 893, 899 [92 Cal.Rptr. 172, 479 P.2d 372].) "The mens rea [for assault] is established upon proof the defendant willfully committed an act that by its nature will probably and directly result in injury to another . . . ." (*People v. Colantuono* (1994) 7 Cal.4th 206, 214 [26 Cal.Rptr.2d 908, 865 P.2d 704].) More recently, the court recognized that simply informing the jury that the requisite mental state can be established by proof that the defendant " 'willfully and unlawfully committed an act that by its nature would probably and directly result in the application of physical force on another person' " created a risk that a defendant could be found guilty based on negligent behavior. (*People v. Williams* (2001) 26 Cal.4th 779, 783 [111 Cal.Rptr.2d 114, 29 P.3d 197] (*Williams*).) In *Williams,* the Supreme Court clarified that "mere recklessness" or "criminal negligence" is not sufficient to establish the crime. (*Id.* at p. 788.) Instead, "a defendant guilty of assault must be aware of the facts that would lead a reasonable person to realize that a battery would directly, naturally and probably result from his conduct. He may not be convicted based on facts he did not know but should have known." (*Ibid.*)

The jury in *Williams* had been given an instruction indicating that assault had two essential elements: " '1. A person willfully and unlawfully committed

Cal.Rptr.3d 42] ("Because the instruction erroneously omitted an element of the crime, [the defendant] did not waive her right to challenge it by failing to object or by failing to request a clarifying instruction.").

an act that by its nature would probably and directly result in the application of physical force on another person; and [¶] 2. At the time the act was committed, such person had the present ability to apply physical force to the person of another.' " (*Williams, supra,* 26 Cal.4th at p. 783.) After *Williams,* CALJIC No. 9.00 was revised to insert a third element, current element 2, which provides that the defendant must have been "aware of facts that would lead a reasonable person to realize that as a direct, natural and probable result of this act that [*sic*] physical force would be applied to another person." (See *People v. Riva* (2003) 112 Cal.App.4th 981, 997, fn. 57 [5 Cal.Rptr.3d 649]; 1 Witkin & Epstein, Cal. Criminal Law (2008 Supp.) Crimes Against the Person, §§ 44, 44A, pp. 192–193.) Here, the trial court initially gave an instruction on the elements of assault which included as element 2 the awareness language approved in *Williams.* However, asked to clarify that portion of the instruction, the court instead told the jury, "there is no awareness element." This permitted the jury to find appellant guilty of assault without considering whether she was aware of facts that would lead a reasonable person to realize that physical force would be applied to Martinez. This represented clear error under the Supreme Court's holding in *Williams.* (See *People v. Riva, supra,* 112 Cal.App.4th at p. 997.)

3.   Prejudice

"An instruction omitting an element of the charged offense violates a defendant's rights under the federal and state Constitutions. [Citations.] Instructional error that withdraws an element of a crime from the jury's consideration is prejudicial under state law unless 'there is "no reasonable probability that the outcome of defendant's trial would have been different had the trial court properly instructed the jury." ' [Citation.] The error is prejudicial under federal law 'unless it can be shown beyond a reasonable doubt that the error did not contribute to the jury's verdict.' " (*People v. Tillotson, supra,* 157 Cal.App.4th at pp. 538–539, quoting *People v. Cole* (2004) 33 Cal.4th 1158, 1208 [17 Cal.Rptr.3d 532, 95 P.3d 811].)

*Williams* illustrates when the trial court's failure to instruct the jury on the awareness element must be deemed prejudicial and when it may be considered harmless. The defendant there had fired a shotgun blast into the rear wheel well of a truck. No one was injured, but the owner of the truck had been crouched behind it at the time, approximately a foot and a half away from the rear wheel well. Testifying at trial, the defendant admitted awareness of the owner's location when he fired the shot. The owner's two boys were also near the truck, but the defendant denied any knowledge of their presence. The jury found the defendant guilty of assault on the truck's owner, but not the two boys. The court concluded the defendant's testimony established the appropriate mental state for assault on the owner, rendering any

error in failing to properly instruct the jury harmless. (*Williams, supra,* 26 Cal.4th at p. 790.)[5] The court commented on the jury's refusal to convict on the other assault counts "in which defendant denied actual knowledge that the victims were near the truck when he fired his shotgun," stating that this confirmed "that the jury was not misled" by the error. (26 Cal.4th at p. 790.)

■ The Supreme Court's analysis of prejudice in *Williams* implied that the instructional error would have been found prejudicial had the jury convicted the defendant of assault on the two boys he testified he did not know were present. (See *People v. Riva, supra,* 112 Cal.App.4th at p. 999.) Here, there was no testimony from appellant. However, she stated to witnesses after emerging from her car that she had not seen Martinez. Officer Mifflin described her as "incoherent" and "dazing in and out of a semiconscious state" when he first confronted her at the scene, and concluded "[s]he wasn't sure where she was or what had happened." Her personal physician testified that she suffered from a long-standing medical condition that could have caused disorientation. Defense counsel argued that the evidence pertaining to appellant's mental and physical condition demonstrated she lacked the necessary intent.[6] Had the jury believed appellant was unable to perceive her surroundings accurately due to a condition not caused by voluntary intoxication, it could have concluded she was unaware of facts that would lead a reasonable person to realize that battery would directly, naturally and probably result from her conduct. However, when the jurors asked for clarification on this key element, the court effectively informed them that appellant's awareness was irrelevant. As the jury was focused on the very element the court told it to disregard, we cannot conclude that there was no reasonable probability that the outcome of defendant's trial would have been different had the trial court properly instructed the jury. (*People v. Tillotson, supra,* 157 Cal.App.4th at p. 539.) Nor can we say beyond a reasonable doubt that the error did not contribute to the jury's verdict. (*Ibid.*) Appellant's assault conviction must therefore be reversed and remanded for retrial.[7]

---

[5] Other situations where courts have concluded failure to instruct the jury on the awareness element was harmless error include *People v. Riva, supra,* 112 Cal.App.4th at page 998, where the defendant fired his gun in a busy urban neighborhood, inadvertently striking a pedestrian, and *People v. Wright* (2002) 100 Cal.App.4th 703, 724–725 [123 Cal.Rptr.2d 494], where the defendant testified he drove his car close to the victims in order to scare them. (See also *People v. Russell* (2005) 129 Cal.App.4th 776, 786 [28 Cal.Rptr.3d 862] [substantial evidence established requisite mental state for assault with a deadly weapon where jury reasonably could have found that defendant knew car was approaching from behind when he pushed victim into street].)

[6] The prosecutor contended her condition was caused by voluntary intoxication, but the jury did not reach a verdict on count one.

[7] That the jury convicted appellant of the evading charge does not alter our conclusion concerning prejudice. As respondent contends, the jury necessarily found that at some point in her drive along the bicycle path, appellant perceived what appeared to be a pursuing peace

B. *Hamilton's Status as Peace Officer*

Appellant contends that substantial evidence does not support her conviction for evading a peace officer (Veh. Code, § 2800.3) because there was insufficient evidence either that Hamilton was a peace officer or that his vehicle was distinctively marked. We agree that the evidence was insufficient to demonstrate that Hamilton was a peace officer within the statutory definition, and reverse on that ground alone.

■ Vehicle Code section 2800.1 provides that any person who "while operating a motor vehicle and with intent to evade," willfully "flees or otherwise attempts to elude a pursuing peace officer's motor vehicle" is guilty of a misdemeanor. Under Vehicle Code section 2800.3, the provision under which appellant was charged, the offense becomes a felony where "willful flight or attempt to elude a pursuing peace officer in violation of Section 2800.1 proximately causes serious bodily injury to any person . . . ."

In order to establish the crime, the prosecution must prove that the officer involved was "a peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 of the Penal Code" and must further establish (1) the peace officer's vehicle was "exhibiting at least one lighted red lamp visible from the front"; (2) the peace officer's vehicle was "sounding a siren as may be reasonably necessary"; (3) the peace officer's vehicle was "distinctively marked"; and (4) the peace officer was "wearing a distinctive uniform." (Veh. Code, § 2800.1, subd. (a)(1)–(4); see *People v. Hudson, supra,* 38 Cal.4th at pp. 1007–1008; *People v. Flood* (1998) 18 Cal.4th 470, 477–478 [76 Cal.Rptr.2d 180, 957 P.2d 869].)

Vehicle Code section 2800.1 specifies that to determine whether the officer involved is a "peace officer," courts must look to "Chapter 4.5 (commencing with Section 830) of Title 3 of part 2 of the Penal Code." Penal Code section 830 provides that "[a]ny person who comes within the provisions of this chapter and who otherwise meets all standards imposed by law on a peace officer is a peace officer, and notwithstanding any other provision of law, no person other than those designated in this chapter is a peace officer." The parties agree that the only provision in chapter 4.5 which potentially applies here is Penal Code section 830.33, subdivision (b), which states: "The following persons are peace officers . . . . [¶] . . . [¶] Harbor or port police regularly employed and paid in that capacity by a county, city, or district . . . , if the primary duty of the peace officer is the enforcement of the

---

officer's vehicle and willfully fled with the intent to elude it. It does not necessarily follow, however, that her mental state was the same at the time of the assault. The jury's concern about the evidence of changes in her awareness or mental state at different points in time was clear from its inquiry of the court.

law in or about the properties owned, operated, or administered by the harbor or port or when performing necessary duties with respect to patrons, employees, and properties of the harbor or port."[8]

Although we are aware of no case authority specifically discussing Penal Code section 830.33, subdivision (b), several courts have explored the meaning of a similar provision, Penal Code section 830.37, subdivision (b), which provides that members of a fire department or fire protection agency are peace officers "if the primary duty of these peace officers, when acting in that capacity, is the enforcement of laws relating to fire prevention or fire suppression." In *Gauthier v. City of Red Bluff* (1995) 34 Cal.App.4th 1441 [41 Cal.Rptr.2d 35], the court held that a fire chief was not a peace officer because "members [of a fire department] are covered by the statute (and, hence, are peace officers) if and only if 'the primary duty of these peace officers, . . . is the enforcement of laws relating to fire prevention or fire suppression.' " (*Id.* at p. 1445.) Although there was evidence that the police chief at times enforced fire prevention laws, there was "no evidence that this was his 'primary duty' while employed by the City of Red Bluff. His 'primary duty' was being the fire chief, managing the fire department." (*Id.* at p. 1446.) Moreover, the fact that certain provisions of the city code gave him the powers of a police officer when enforcing fire codes "does not mean he is a 'peace officer' within the meaning of the Penal Code, only that he has certain powers that police officers possess." (*Id.* at pp. 1446–1447.) In short, "a person who does not have the *primary* duty of law enforcement cannot be a 'peace officer' under this statute." (*Id.* at p. 1447)

The court came to a similar conclusion in *Service Employees Internat. Union v. City of Redwood City* (1995) 32 Cal.App.4th 53 [38 Cal.Rptr.2d 86], where a union representing fire prevention officers (FPO's) sought a declaratory ruling that the FPO's were peace officers under Penal Code section 830.37, subdivision (b). The court noted that chapter 4.5 of title 3 of part 2 of the Penal Code "specifies dozens of government employees as peace officers, sometimes simply by job title, but more often by reference both to a position and its primary duties." (*Service Employees Internat. Union v. City of Redwood City, supra*, 32 Cal.App.4th at p. 60, fn. omitted.) From "[t]he plain import of this statutory system," the court concluded, "the Legislature intended to grant peace officer status, and the powers and authority conferred with that status in particular instances, subject to carefully prescribed limitations and conditions." (*Ibid.*) Accordingly, the court held that "the trial court reached the correct decision in holding that the FPO's are not peace officers under section 830.37, subdivision (b)." (*Service Employees Internat. Union v. City of Redwood City, supra*, at p. 63.)

---

[8] This was the definition of "peace officer" provided to the jury.

In its brief, respondent does not dispute that Hamilton's status as a peace officer depends on a finding as to his primary duties.[9] Nor does it dispute that the prosecutor never asked Hamilton to specify his primary duties. In response to a few brief questions on this topic, Hamilton testified that he worked for "the City of Long Beach Fire Department" and "the lifeguards"; his job title was "rescue boat operator" or "harbor patrolman"; in that position, he had the authority to detain individuals and issue citations, but he "mostly" drove a rescue or harbor patrol boat. Respondent contends that because a law enforcement officer's duties include rescue and Hamilton testified that he operated a "rescue boat" or "patrol boat," the jury could have inferred that he was engaged in "policing functions." This argument is unpersuasive. Respondent's analysis ignores the plain language of the statute. Penal Code section 830.33, subdivision (b) does not confer peace officer status on harbor or port police who engage in any "policing functions" or who perform any duty that might also be performed by a peace officer. Rather, it confers peace officer status on those whose "primary duty" is "the enforcement of the law." Hamilton testified that he "mostly" operated a rescue or patrol boat. From Hamilton's description of his duties, the jury could not conclude beyond a reasonable doubt that he was primarily engaged in the enforcement of the law.

In the final analysis, appellant's conviction under Vehicle Code section 2800.3 suffers from the same defect identified by the court in *People v. Acevedo*: "[T]he prosecution simply failed to close a sizable evidentiary gap mandated by the terms of the statute [the defendant] allegedly violated." (*People v. Acevedo* (2003) 105 Cal.App.4th 195, 199 [129 Cal.Rptr.2d 270].) No question, appellant was engaged in the type of dangerous and defiant behavior the statute was enacted to prevent. However, a criminal conviction, particularly one based on these provisions of the Vehicle Code, cannot be based on a violation of the spirit of the law. The Legislature enacted precise elements for the crime. Here, the prosecutor failed to prove every element of

---

[9] At oral argument, respondent contended for the first time that employees of the harbor or port police should be considered peace officers as long as they are "regularly . . . paid in that capacity by a county, city, or district" and "performing necessary duties with respect to patrons, employees, and properties of the harbor or port." Under this interpretation, the final clause of Penal Code section 830.33, subdivision (b) would operate to create a wholly separate category of harbor and port police employees who may be deemed peace officers without regard to whether their primary duty is enforcement of the law. This definition would bestow peace officer status on a broad category of employees who perform no law enforcement functions, and cannot be reconciled with prior decisions' strict interpretation of the provisions of chapter 4.5 of title 3 of part 2 of the Penal Code. (See, e.g., *Gauthier v. City of Red Bluff, supra*, 34 Cal.App.4th at p. 1446 [rejecting proposed interpretation of Pen. Code, § 830.37, subd. (b) under which all firefighters would be defined as peace officers because they "at one time or another perform[] some duty relating to fire suppression or prevention laws"; court observed: "If the Legislature had meant that all firefighters were to be peace officers it would have said so"].)

the offense of evading a peace officer because he presented no evidence to support that the pursuing officer was a peace officer. The conviction under Vehicle Code section 2800.3 must be reversed. Because an appellate finding that the evidence was insufficient to sustain a conviction is equivalent to an acquittal, retrial on this count is barred. (*People v. Seel* (2004) 34 Cal.4th 535, 542 [21 Cal.Rptr.3d 179, 100 P.3d 870].)

### C. Sentencing Issues

#### 1. Driving with Suspended License

■ Under Vehicle Code section 14601, subdivision (b)(1), a first conviction for driving with a suspended license can result in imprisonment in a county jail for not more than six months. The trial court sentenced appellant to one year in county jail, a sentence permitted only if the offense occurred within five years of a prior conviction of driving with a suspended license under Vehicle Code section 14601, 14601.1, 14601.2, or 14601.5. (Veh. Code, § 14601, subd. (b)(2).) The information alleged that appellant suffered a prior conviction under section 14601.1 in July 2005. However, as appellant points out in a supplemental brief, after she waived jury trial on the alleged prior for driving with a suspended license, the trial court failed to conduct a trial or make any findings. It necessarily follows that the sentence imposed was legally unauthorized and must be reversed. As double jeopardy protections do not apply to the trial of prior conviction allegations (*People v. Monge* (1997) 16 Cal.4th 826, 845 [66 Cal.Rptr.2d 853, 941 P.2d 1121]), we remand for a court trial on the prior conviction allegation and resentencing (see *People v. Walker* (2001) 89 Cal.App.4th 380, 387 [107 Cal.Rptr.2d 264]).

#### 2. Assault

Although reversal of the assault conviction renders the sentencing issues raised by appellant pertinent to the assault charge technically moot, we address them to provide direction to the trial court should appellant be retried and convicted on the assault count.

##### a. Dual Use of Sentencing Factor

■ Appellant contends the trial court improperly imposed a consecutive sentence on count three (hit and run) based on its conclusion that "the crime of this offense was one of great violence." Rule 4.425 of the California Rules of Court governing "[c]riteria affecting the decision to impose consecutive rather than concurrent sentences" states that "[a] fact used to otherwise enhance the defendant's prison sentence" may not be used or considered in deciding whether to impose consecutive sentences. Appellant contends the

"violence" the court referred to was the great bodily injury suffered by Martinez and used to enhance the sentence on the assault charge. Respondent counters that the court was referring to the separate "violence" of the hit-and-run incident itself, during which appellant collided for a second time with Fong's vehicle in order to push it out of the way and effectuate her escape. If on remand, appellant is again convicted of assault and the court again decides to impose consecutive sentences on this basis, it should specify the act or acts of "violence" to which it refers.

### b. *Upper Term*

Appellant was sentenced to the upper term for assault based on the trial court's conclusion that "the victim was particularly vulnerable." In reaching its conclusion, the court cited a number of facts, none of which was found true by the jury beyond a reasonable doubt. This was improper under *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] and *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856]. (See *People v. Sandoval* (2007) 41 Cal.4th 825, 837 [62 Cal.Rptr.3d 588, 161 P.3d 1146].)

Appellant was sentenced June 20, 2007, after the United States Supreme Court invalidated California's former determinate sentencing law in *Cunningham v. California, supra*, 549 U.S. 270, and after the Legislature enacted a new sentencing law, but before the California Supreme Court's decision in *People v. Black* (2007) 41 Cal.4th 799 [62 Cal.Rptr.3d 569, 161 P.3d 1130] (known as *"Black II"*) and *People v. Sandoval, supra*, 41 Cal.4th 825. It is unclear whether the trial court utilized the new sentencing law or whether the sentence imposed represented an attempt to follow the former law. Appellant contends the new sentencing law cannot be applied to crimes committed before its enactment on March 30, 2007.

In *People v. Sandoval*, the Supreme Court judicially reformed the former sentencing law to conform to the new law and concluded that imposition of sentence under the reformations announced would not violate the prohibition on ex post facto laws.[10] (*People v. Sandoval, supra*, 41 Cal.4th at pp. 852, 857.) Accordingly, on remand, again assuming appellant is retried and convicted on count four for assault, the court is free to resentence under the principles announced in *People v. Sandoval*.

---

[10] The court did not decide whether the new sentencing law was intended to apply to pending cases, but noted that "[c]riminal statutes presumptively apply only prospectively." (*People v. Sandoval, supra*, 41 Cal.4th at pp. 845–846.)

## DISPOSITION

Appellant's conviction on count five for evading a peace officer is reversed for lack of substantial evidence. Her conviction on count four for assault with a deadly weapon is reversed and remanded for further proceedings. Her sentence on count two is reversed and remanded for further proceedings. Whether the prosecutor elects to retry appellant on count four or retry the prior allegation, the sentence must be recalculated. In all other respects, the judgment is affirmed.

Epstein, P. J., and Willhite, J., concurred.

A petition for a rehearing was denied July 16, 2008, and the opinion was modified to read as printed above.