Filed 10/15/13  P. v. Arterberry CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RASHEEN GERMAIN ARTERBERRY,<br><br>    Defendant and Appellant. | B242468<br><br>(Los Angeles County<br>Super. Ct. No.VA116917) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert A. Higa, Judge.  Remanded with directions.

Meredith J. Watts, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Mary Sanchez and David Zarmi, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Rasheen Germain Arterberry appeals from the judgment entered following his conviction by jury of second degree robbery and being a felon in possession of a firearm. (Pen. Code, §§ 211, 12021, subd. (a)(1).)[1] The jury also found that during the commission of the robbery, defendant personally used a firearm and a principal was armed with a firearm. (§§ 12022.53, subd. (b), 12022, subd. (a)(1).) He alleges sentencing error and asks this court to conduct an independent review of the in camera hearing conducted pursuant to his *Pitchess* motion.[2]

## STATEMENT OF FACTS[3]

On September 19, 2010, Fernando Tamaura was working at a Mobil gas station in the City of Whittier. At approximately 8:30 that evening, two males grabbed Tamaura and pulled him away from the counter where the cash register was located. One of the males was armed with a firearm. They asked him for money. One of the assailants went through Tamaura's pocket and took $700 in cash. Tamaura was forced to open the cash register and the men took approximately $1,300. They also grabbed a cigar box that was nearby.

When the robbers left the location, Tamaura saw them get into a gold Pontiac, which was being driven by a third individual. Tamaura got into his truck and followed the Pontiac as it left the station. Eventually, Tamaura saw the Pontiac park in a driveway. He lost sight of the three suspects when they went toward a back house.

In court, Tamaura identified a picture of the Pontiac he followed and defendant as the armed robber.

The robbery was captured on videotape and the recording was played for the jury.

---

[1] All further statutory references are to the Penal Code.

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

[3] As defendant does not attack the sufficiency of the evidence, we present an abbreviated version of the facts.

Los Angeles County Sheriff's Deputy Eduardo Ayala was on duty that evening. He received a radio call informing him that a robbery victim was following the suspects into the area where Ayala was patrolling. The deputy met Tamaura at the intersection of Strozier and Lerma. Tamaura told Deputy Ayala that he last saw the suspects running westbound. Ayala utilized the radio to set up a containment of the area.

Whittier Police Department Officer Angela Calzada responded to the containment area to search for the suspects. She looked inside the Pontiac that had been pointed out by the victim and observed a black hat, a cigar box, and a black handgun.

Deputy Kurt Messerschmidt and his canine arrived at the containment area. They began searching for the suspects in backyards in the area with no success. The deputy and the canine were dispatched to a construction site. Deputy Messerschmidt observed a small building with a door. The dog began barking, indicating it detected the presence of a human being. After the deputy announced he was going to release the dog, one of the suspects emerged from the building. Subsequently, all three were taken into custody.

An officer checked the interior of the building. On the floor, he located jeans, shoes, a bandana, and a wallet containing defendant's identification. When defendant was taken into custody, he was wearing no outer clothing.

Defendant's mother said she and defendant's grandmother purchased the Pontiac used in the robbery for defendant.

**DISCUSSION**

**I.** **The Trial Court Properly Determined That No Personnel Records Were Discoverable**

Defendant filed a *Pitchess* motion seeking the disclosure of complaints in the personnel records of Officer Michael Balzano.[4] The trial court ruled that it would

---

[4]  Defense counsel erroneously states in the opening brief that defendant requested discovery of materials in the personnel file of Lieutenant Davis. Lieutenant Davis was the officer who provided Officer Balzano's personnel file during the in camera hearing.

3

conduct an in camera hearing to determine whether complaints claiming the officer had engaged in writing false reports or fabricating probable cause should be disclosed to the defense. (Defendant does not challenge the scope of the court's ruling with regard to the subject matter of the complaints it was to examine.) After conducting the hearing, the court concluded that no materials were discoverable.

Defendant asked this court to independently review the transcript of the in camera hearing. We have done so. The trial court had Officer Balzano's personnel file. It properly set forth with particularity the subject matter of each complaint it reviewed. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1229-1230.) We conclude it did not abuse its discretion in determining that nothing in the officer's personnel file was discoverable. (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039 ["A motion for discovery of peace officer personnel records is addressed to the sound discretion of the trial court, reviewable for abuse."].)

## II. Sentencing Error Must Be Corrected and the Matter Must Be Remanded for a Trial on the Prison Prior Allegations

The amended information alleged that defendant had suffered two prior serious felony convictions within the meaning of sections 1170.12, subdivisions (a)-(d) and 667, subdivisions (b)-(i), one prior serious felony conviction within the meaning of section 667, subdivision (a) and two convictions within the meaning of section 1203, subdivision (e)(4). In addition, defendant was alleged to have served two prior prison terms within the meaning of section 667.5, subdivision (b).

Defendant admitted he had two prior serious felony convictions within the meaning of sections 1170.12, subdivisions (a)-(d) and 667, subdivisions (b)-(i) and, notwithstanding the fact that the amended information alleged only one, two prior convictions within the meaning of 667, subdivision (a). Defendant did not admit suffering the two nonserious convictions or serving two prior prison terms. Nor was a trial conducted to dispose of the allegations. Those allegations simply fell through the cracks. The court imposed a 25-year-to-life sentence for the robbery conviction, 10 years

4

for the gun enhancement, and 10 years pursuant to section 667, subdivision (a) (five years for each prior) for a total term of 45 years to life. The sentence for the principal armed allegation was stricken. A concurrent 25-year-to-life sentence was imposed for the felon in possession of a firearm conviction.

The parties agree that the court erred in imposing a second five-year term pursuant to section 667, subdivision (a) and striking the sentence for the principal armed allegation. Ignoring the fact that the court could not impose 2 five-year sentences because defendant was charged with only one qualifying prior under section 667, subdivision (a), the parties correctly point out that the two robbery priors defendant suffered were brought in the same proceeding. Section 667, subdivision (a) provides that a five-year enhancement for a prior serious felony conviction shall be imposed for "each such prior conviction on charges brought and tried separately." For that reason as well, the trial court could properly impose only 1 five-year sentence. (*In re Harris* (1989) 49 Cal.3d 131, 136-137.) The parties also correctly conclude that the court should have imposed and stayed the principal armed allegation instead of striking it. (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1130.)

With respect to the two section 667.5, subdivision (b) priors, the parties take opposing positions. Defendant asserts the trial court was aware of the two prison priors and impliedly exercised its discretion to not impose an additional sentence. The Attorney General argues that because the prior allegations were neither tried nor admitted, the matter must be remanded for the court to conduct a trial. The Attorney General has the better argument.

Defendant waived his right to a jury trial on the prior allegations. There is no question that the section 667.5, subdivision (b) allegations were never resolved by way of trial or admission. (Neither were the section 1203, subdivision (e)(4) allegations, but they have no effect on defendant's sentence.) We confronted a similar situation in *People v. Miller* (2008) 164 Cal.App.4th 653. The information alleged that the defendant had suffered a prior conviction. However, after she waived jury trial on the alleged prior, the trial court failed to conduct a trial or make any findings. We concluded: "As double

jeopardy protections do not apply to the trial of prior conviction allegations (*People v. Monge* (1997) 16 Cal.4th 826, 845), we remand for a court trial on the prior conviction allegation and resentencing [citation]." (*People v. Miller*, *supra*, at p. 668.) The same result is called for here.

## DISPOSITION

The matter is remanded to the trial court for further proceedings. If the People so desire, a court trial on the section 667.5, subdivision (b) and 1203, subdivision (e)(4) allegations is to be conducted.[5] The court is directed to strike one of the five-year sentences imposed pursuant to section 667, subdivision (a) and impose and stay the sentence pursuant to section 12022, subdivision (a). The clerk is directed to forward an amended abstract of judgment to the Department of Corrections and Rehabilitation.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

SUZUKAWA, J.

We concur:

WILLHITE, Acting P. J.

MANELLA, J.

---

[5]   Given the sentence that defendant received, the prosecution may well conclude that further proceedings would constitute a waste of court resources; however, that decision must be a product of the exercise of prosecutorial discretion, not judicial fiat.