Filed 9/21/16  P. v. Cook CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JEFFERY DAVID COOK, <br><br> Defendant and Appellant. | F071479 <br><br> (Super. Ct. No. 11358) <br><br><br> **OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Mariposa County.  Michael A. Fagalde, Judge.

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Christopher J. Rench, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Kane, Acting P.J., Franson, J. and Smith, J.

Jeffery David Cook was convicted of two counts of assault, evading a police officer, and cruelty to animals after he led police on a chase with his dogs in the back of his pickup. He argues the evidence is insufficient to support one of the assault counts because the undisputed facts fail to prove he had the necessary mental state to support the crime. We disagree and affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

The first amended information charged Cook with assault with a deadly weapon upon a peace officer (Pen. Code, § 245, subd. (c))**[1]**, assault with a deadly weapon upon Kelly Salonen (§ 245, subd. (a)(1)), evading a police officer with willful disregard for the safety of others while operating a vehicle (Veh. Code, § 2800.2, subd. (a)), and cruelty to animals (§ 597, subd. (b)). The information also alleged as enhancements to the first three counts that Cook suffered a prior conviction which constituted a strike within the meaning of section 667, subdivisions (b)-(i), and that the same conviction was a serious felony within the meaning of section 667, subdivision (a)(1). Cook pled not guilty and not guilty by reason of insanity to the charges.

Our summary of the trial proceedings will focus on the testimony relevant to the issue in this appeal, the assault count wherein Salonen was the victim. The events leading up to the charges against Cook began with Cook presenting himself to animal control officer Eric Vogel and making bizarre statements and unreasonable demands. Eventually Cook made a statement which Vogel interpreted as a threat, so Vogel called the sheriff's department dispatch officer.

Sergeant Kim Miller of the Mariposa County Sheriff's Department was on duty when she heard the call from the dispatch center advising of the encounter between Vogel and Cook. Miller was familiar with Cook and his vehicle from past encounters with Cook. As Miller was driving in town, she spotted Cook driving his vehicle. Cook

---

**1** All statutory references are to the Penal Code unless otherwise indicated.

appeared to see Miller, and changed his direction of travel to avoid Miller. Miller activated the lights and siren on the marked patrol vehicle. Miller observed dogs in the bed of Cook's pickup truck, which were bouncing around as a result of Cook's erratic driving.

Cook turned onto a cul-de-sac. Cook drove around the roadway so he was facing Miller's vehicle. Miller drove her vehicle across the street, effectively blocking Cook from exiting the area of the circular roadway. Cook looked at Miller and began accelerating his vehicle. Miller moved her vehicle to avoid a collision. Cook drove down a dirt embankment to return to a different roadway, Highway 140. The dogs in the back of Cook's vehicle were being jostled continuously during the chase. Miller saw a flatbed pickup truck parked on the side of Highway 140 near where Cook was approaching the roadway. A pedestrian was near the flatbed pickup truck. Cook drove his vehicle past the flatbed pickup, across the nearest lanes of the roadway, across the median, and into the far traffic lane driving away from the area. Using surface streets, Miller drove to Highway 140 in an attempt to follow Cook.

On cross-examination, Miller admitted she did not know if Cook saw the pedestrian.

Salonen testified she was jogging along Highway 140 on that day. She heard sirens from a police vehicle or an ambulance as she approached the flatbed pickup. She checked both directions of the roadway and did not see any emergency vehicle so she continued on her jog past the flatbed pickup. When she was approximately two to three feet past the flatbed pickup she caught movement in her peripheral vision and saw a pickup driving down the embankment. She jumped back to avoid being hit by the pickup. When the pickup passed her, she probably could have touched it. She also saw a dog in the bed of the pickup which appeared to be struggling to stay in the bed. Salonen did not think the driver of the pickup saw her or tried to hit her. He never looked at her or made eye contact with her.

3.

Mariposa County Deputy Sheriff Tim Lewis testified that he located and followed Cook's pickup after it drove down the embankment. Cook drove at an unsafe speed, and crossed over the center lane divider at least twice. Cook did not stop his pickup even though Lewis was in a marked patrol vehicle with his lights and sirens activated. At one point during the pursuit, Cook stuck his left arm out the window of the pickup with his middle finger extended. Lewis terminated the pursuit when ordered to do so by his captain.

The jury found Cook guilty as charged. Prior to proceeding to the insanity phase of the trial, Cook accepted the prosecution's offer of a stipulated prison term of five years eight months in exchange for Cook's dismissal of the not guilty by reason of insanity plea. This resolution required the prosecutor to dismiss both the prior strike and the prior serious felony allegations. Cook was thereafter sentenced to the agreed upon term.[2]

## DISCUSSION

Cook presents a single argument in this appeal which, even if successful, would not change the sentence. He argues there was insufficient evidence to support the jury's verdict of guilty in count II, the assault with a deadly weapon wherein Salonen was the victim. Cook does not dispute the evidence presented, but instead asserts this evidence was inadequate to establish the mental state required to commit an assault.

In this count, the testimony established Cook, in an attempt to avoid Sergeant Miller, drove down the embankment and onto a roadway at an unsafe speed and in apparent disregard for vehicular and pedestrian traffic. Salonen was jogging on the roadway, and had to jump out of the way to avoid being hit by Cook's pickup as Cook drove onto the roadway. Salonen testified that it did not appear Cook saw her, and she did not believe he was attempting to hit her. Cook's argument, in essence, is that he

---

[2]    As part of the agreement, Cook also agreed to plead guilty to a misdemeanor driving under the influence case that had been trailing this case. He was sentenced to time served.

4.

could not have had the required mental state to commit an assault with a deadly weapon if he neither saw nor intended to hit Salonen.

With regard to this count, the trial court instructed the jury that only a general criminal intent was required, and then defined the crime for the jury with CALCRIM No. 875, the relevant portion of which stated:

> "The Defendant is charged in Count 2 with assault with force likely to produce great bodily injury.

> "To prove that the Defendant is guilty of this crime, the People must prove that:

> "The Defendant did an act that by its nature would directly and probably result in the application of force to a person, and the force used was likely to produce great bodily injury;

> "Two, the Defendant did that act willfully;

> "Three, when the Defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone;

> "And, four, when the Defendant acted, he had the present ability to apply force likely to produce great bodily injury.

> "Someone commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intended to break the law, hurt someone else, or gain any advantage.

> "[¶] … [¶]

> "The People are not required to prove that the Defendant actually intended to use force against someone when he acted."

The People argue it is irrelevant whether Cook was aware of Salonen's presence when he drove down the embankment, because the act of driving down the embankment to avoid the sheriff's department was an act that "by its nature would directly and probably result in the application of force to a person, and the force used was likely to produce great bodily injury." Since Cook "was aware of facts that would lead a

reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone," the evidence established the required mental state.

Although the parties cite numerous cases, this case may be resolved by the Supreme Court's latest attempt to define the mental state for the crime of assault, *People v. Williams* (2001) 26 Cal.4th 779 (*Williams*). Williams and the victim were competing for the affections of a woman. The victim drove to the woman's home and left a note asking her to come outside and talk to him. Williams was present, found the note, and told the victim to leave. Williams then retrieved a shotgun from his vehicle, loaded it, and shot a "warning shot" at the victim. Williams was convicted of assault. The appellate court overturned the conviction concluding the jury was improperly instructed.

The Supreme Court affirmed the conviction, and once again revisited the required mental state to commit an assault. It explained that an "assault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur. Rather, assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." (*Williams, supra,* 26 Cal.4th at p. 790.) "In other words, a defendant guilty of assault must be aware of the facts that would lead a reasonable person to realize that a battery would directly, naturally and probably result from his conduct. He may not be convicted based on facts he did not know but should have known. He, however, need not be subjectively aware of the risk that a battery might occur." (*Id*. at p. 788.) The Supreme Court explained this concept with an example: "For example, a defendant who honestly believes that his act was not likely to result in a battery is still guilty of assault if a reasonable person, viewing the facts known to defendant, would find that the act would directly, naturally and probably result in a battery." (*Id*. at p. 788, fn. 3.)

The Supreme Court acknowledged the required mental state for assault incorporated the language of probability because the defendant is being punished for that

6.

which might have occurred, not that which actually occurred. (*Williams, supra,* 26 Cal.4th at p. 787 ["Because assault criminalizes conduct based on what *might* have happened—and not what *actually* happened—the mental state for assault incorporates the language of probability, i.e., direct, natural and probable consequences."].) Finally, the Supreme Court affirmed that assault does not require a specific intent to injure the victim. (*Id.* at p. 788.)

With these principles in mind, it is clear there is sufficient evidence to support the assault conviction in count II. The evidence established Cook was attempting to evade Sergeant Miller, and in doing so he drove down a steep embankment at an unsafe speed to illegally enter Highway 140, apparently without concern for pedestrian or vehicular traffic. The jury could logically infer from the evidence Cook knew Sergeant Miller was attempting to stop him, and Cook chose to drive down the embankment as a shortcut to return to Highway 140 and escape from Sergeant Miller. As Salonen explained, this was especially dangerous because one would not expect a vehicle to be driven in such a manner, i.e., Salonen was startled when she saw a vehicle coming down the embankment and turning onto the roadway without stopping and without concern for pedestrians or vehicular traffic. From an objective standpoint, a reasonable person would believe that a natural and probable consequence of Cook's driving would be injury to someone.

*Williams* also reaffirmed that "mere recklessness or criminal negligence" would not be sufficient to establish the mental state required for an assault. (*Williams, supra,* 26 Cal.4th at p. 788.) To the extent Cook suggests his actions constituted "mere recklessness or criminal negligence," we disagree. Cook was aware of the facts (driving down an embankment at an unsafe speed to reach Highway 140 to escape Miller, and with poor visibility of both oncoming pedestrians and oncoming traffic) that would lead a reasonable person to realize that a battery would directly, naturally and probably result from his conduct, i.e., it was probable Cook would strike someone when he entered the roadway. (*Ibid.*) Whether Cook subjectively was aware of the risk a battery might occur

7.

is irrelevant, as is the assertion that Cook did not see Salonen jogging down the roadway. (*Ibid.*) We accept for the purposes of this argument that Cook did not realize Salonen was jogging on the roadway. However, the jury could conclude a reasonable person would know there is both vehicular and pedestrian traffic on this roadway and Cook would not be able to avoid either while driving in the manner in which he chose to drive. Or, to paraphrase footnote 3 in *Williams*, even if Cook honestly did not believe his actions would result in an accident, the jury could infer the facts known to Cook would lead a reasonable person to conclude his actions would directly, naturally and probably result in a battery.

Although *Williams* resolves Cook's argument, we feel it necessary to discuss *People v. Miller* (2008) 164 Cal.App.4th 653 (*Miller*), which Cook asserts requires a different result. Miller was convicted of numerous crimes including assault with a deadly weapon. The charges arose out of Miller's operation of a vehicle on a single day. Miller first drove away from the scene of an accident she caused, then drove to a beach access road and eventually onto a bicycle path. Numerous pedestrians and bicyclists were forced to jump out of Miller's path. Miller, who was driving between 25-35 miles per hour, eventually struck a pedestrian. A short distance later she stopped, claiming she did not see the pedestrian she struck. Responding police officers described Miller as disoriented, speaking with slurred speech, and at times speaking in a manner that did not make sense. Another officer described Miller as shaking violently, with breath that smelled of a chemical.[3] He also described Miller as incoherent, and fading in and out of a semiconscious state. Miller failed several field sobriety tests. (*Id*. at pp. 657-659.)

---

[3] Attempts to draw a blood sample for testing were unsuccessful. (*Miller, supra,* 164 Cal.App.4th at pp. 657-659.)

As relevant here, the trial court instructed the jury with CALJIC No. 9.00, which was similar in relevant respects to the instructions given in this case.[4] During deliberations, the jury submitted a question concerning the second element of assault, whether "The person committing the act was aware of facts that would lead a reasonable person to realize that as a direct, natural and probable result of this act that [*sic*] physical force would be applied to another person." (*Miller, supra,* 164 Cal.App.4th at p. 661.) The jury asked, " ' Regarding count 4, element 2, it states, ["] was the person aware[,"] etc. Is there a temporal portion to this count? At what point in time was the defendant charged with this count? Which assault is this count referring to?' " (*Ibid.*) After consulting with the attorneys, the court replied to this question with " '1. There is no "awareness" element. [¶] 2. There is no "temporal" element. [¶] 3. This count refers to the same incident which comprises the event charged in Count I.' " (*Ibid.*)

The appellate court concluded the trial court's statement that " 'there is no "awareness" element' " constituted instructional error, and the error was prejudicial. (*Miller, supra,* 164 Cal.App.4th at p. 661.) The appellate court reasoned the trial court's response permitted the jury to find Miller "guilty of assault without considering whether she was aware of facts that would lead a reasonable person to realize that physical force would be applied to" the victim, which was "clear error" in light of the Supreme Court's opinion in *Williams.* (*Miller, supra,* 164 Cal.App.4th at p. 663.)

---

[4]     The appellate opinion stated the jury was instructed as follows: " 'In order to prove an assault, each of the following elements must be proved: 1. A person willfully committed an act which by its nature would probably and directly result in the application of physical force on another person; [¶] 2. The person committing the act was aware of facts that would lead a reasonable person to realize that as a direct, natural and probable result of this act that [*sic*] physical force would be applied to another person; and [¶] 3. At the time the act was committed, the person committing the act had the present ability to apply physical force to the person of another.' " (*Miller, supra,* 164 Cal.App.4th at p. 661.)

Appellate counsel for Cook argues in her reply brief that because of the "near-identical facts, [and] the reasoning, and holding" in *Miller*, we must conclude that Cook's decision to drive down the embankment at an unsafe speed without concern for vehicular traffic or pedestrians cannot support the assault conviction. It appears appellate counsel is asserting that Cook's actions constituted no more than reckless driving or criminal negligence, which *Williams* held was an insufficient mental state to support an assault conviction. (*Williams, supra,* 26 Cal.4th at p. 788.) But *Miller* provides no support for this argument. The appellate court in *Miller* found instructional error based on the trial court's response to the question submitted by the jury. Cook does not argue the jury was incorrectly instructed. Therefore, *Miller* is inapposite.

The undisputed evidence in this case established that Cook decided to drive down the embankment at an unsafe speed without concern for vehicular or pedestrian traffic. The jury could reasonably infer from this evidence that such conduct constituted more than criminal negligence or reckless driving. Instead, the jury could reasonably and logically infer that Cook acted with the mental state necessary to support an assault conviction.

## DISPOSITION

The judgment is affirmed. We noted, however, a minor mistake in the Abstract of Judgment, filed March 10, 2015. The sentence imposed for count II is indicated to be two months concurrent. The actual sentence was two years concurrent. We will remand the matter to the trial court to correct the Abstract of Judgment.