Filed 9/22/14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRYAN M. PENNINGTON,<br><br>    Defendant and Appellant. | 2d Crim. No. B249482<br>(Super. Ct. No. 1423213)<br>(Santa Barbara County) |

As against a claim of insufficiency of the evidence, we hold that a harbor patrol officer who is (1) sworn as a peace officer, (2) supervised by a city police chief, (3) wears a badge, and (4) carries a police issued firearm, taser, baton, handcuffs, and pepper spray is a "peace officer" within the meaning of Penal Code section 830.33, subdivision (b) if he or she performs necessary duties with respect to patrons, employees, and properties of the harbor or port. [1]

Bryan M. Pennington appeals from the judgment entered after a jury convicted him of felony resisting an executive officer (§ 69); misdemeanor battery on a peace officer (§ 243, subd. (b)); misdemeanor trespass (§ 602, subd. (k)); and misdemeanor attempted petty theft. (§§ 664, 484, subd. (a).) The trial court found true an enhancement allegation that, when appellant committed the felony offense of resisting an executive officer, he was out on bail for an earlier offense. (§ 12022.1, subd. (b).) Probation was granted for five years on condition that he serve 365 days in county jail.

_____

[1] All statutory references are to the Penal Code.

A Santa Barbara Harbor Patrol Officer was the named victim of the misdemeanor battery on a peace officer. Appellant contends that (1) the evidence is insufficient to show that the named victim was in fact a peace officer; (2) the trial court erroneously instructed the jury that a member of the Santa Barbara Harbor Patrol is a peace officer; (3) the trial court erroneously precluded appellant from arguing to the jury that the named victim was not a peace officer; (4) the evidence is insufficient to support his conviction of trespass; (5) the trial court erroneously failed to instruct sua sponte on the claim-of-right and mistake-of-fact defenses to attempted petty theft; and (6) the "out-on-bail" sentencing enhancement must be permanently stayed. We affirm.[2]

*Facts*

Patrick Henry worked as a manager for the City of Santa Barbara Waterfront Department. He issued keycards to persons who were authorized to enter waterfront private areas which are not open to the public. The keycards were used to unlock gates to these restricted areas, which were called "marinas." Only boat owners who rented boat slips and authorized guests were allowed to enter a marina. A visitor was not permitted to enter unless he was escorted by a keycard holder. The restrictions on entry to the marinas were set forth in a section of the Santa Barbara Municipal Code.

On the entry side of the locked gate to Marina 3 (the Marina), a sign read: "Unauthorized entry prohibited. Boat owners and authorized guests only." Henry saw custodial workers exit through the gate. Appellant, who was outside the Marina, ran to the gate, "caught it before it locked into place," and entered the Marina. Henry recognized appellant and knew his entry was unauthorized. Appellant was no stranger to the harbor personnel. On May 5, 2009, he got into a "wrestling match" with a harbor patrol officer. On July 7, 2012, he threatened to stab a harbor patrol officer. Henry telephoned the Harbor Patrol Office.

---

[2] Appellant does not attack the felony resisting an executive officer conviction, and the order granting probation is reasonably predicated on this conviction alone. Nevertheless, he may lawfully advance the specified contentions on appeal. We simply observe that even if he were to prevail on all contentions, we would still affirm the order granting probation.

2

Richard Hubbard, the named victim of the misdemeanor battery on a peace officer, responded to Henry's call. He was employed by the City of Santa Barbara as a "Harbor Patrol officer." Hubbard performed duties "as a law enforcement officer, a boating safety officer, [an] emergency medical technician, [a] marine firefighter, and [an] ocean lifeguard." Hubbard "enforc[ed] the law in the harbor district" and patrolled "the marinas on foot, with vehicles and also on boat[s] . . . just like PD [police department officers] would patrol the city streets." One of his duties was to assure "that only people that are authorized to be in the marinas are in there." His supervisor was the Chief of the Santa Barbara Police Department. He was a sworn peace officer, wore a badge, and had the power to make arrests. He carried "a department-issued sidearm, taser, baton, handcuffs and OC [pepper] spray."

Hubbard and his partner, Harbor Patrol Officer Kelly, entered the Marina. They were "in full Harbor Patrol uniform." They saw appellant with a coiled hose over his shoulder. Hubbard said to appellant: "You need to stop. We need to talk to you." Appellant did not reply and "tried to push . . . through where [Hubbard and Kelly] were standing." The officers stopped him, and appellant said he was there to get the hose for his friend, Carol, who had given him permission to take it. Hubbard told appellant "to put the hose back until [they] could verify his story." Appellant put the hose down and walked away. Hubbard and Kelly followed him. Hubbard said to appellant: "We're not done. I need to talk to you." Appellant "kept going," so Hubbard "put [his] hand out on [appellant's] chest to stop him." Appellant kicked Hubbard in the thigh. The blow hurt and "[l]eft a good-sized bruise." Appellant "took . . . an aggressive fighting stance," clenched his fists, and kicked Officer Kelly in the shin. Hubbard grabbed appellant, who "started throwing a bunch of . . . wild punches and kicks in the air." The kicks were directed toward Hubbard's face.

Officer Kelly fired his taser at appellant. The taser barb struck appellant's jacket but did not penetrate his skin. Appellant turned and ran away. Kelly chased appellant and wrestled him to the ground. Appellant said: "Motherfucker. You're dead. I'm going to kill

you."  After he was handcuffed, appellant told the officers: "I'm going [to] find you where you live and kill you in your house.  Just wait until I get out and you're dead."[3]

The hose belonged to Peter Crane, who owned a houseboat that was docked at the Marina.  He did not authorize appellant to take the hose.  Carol Holm had permission to use Crane's hose to clean her boat, which was near Crane's houseboat.

Carol Holm testified that she employed appellant  as a worker on her boat.  After appellant was arrested, she told the Harbor Patrol that appellant did not have permission to remove the hose because it belonged to her neighbor.  But at trial Holm testified that she had given appellant permission to take the hose to another location in the Marina.  On the date in question, appellant did not ask Holm for permission to go to her boat and use the hose.  Holm opined that appellant could enter the Marina and work on her boat because he worked for her.

*Sufficiency of the Evidence/Battery on a Peace Officer*

Appellant contends that the evidence is insufficient to support his conviction of misdemeanor battery on a peace officer (§ 243, subd. (b)) because the People failed to prove that the named victim, Officer Hubbard, was in fact a peace officer.  " 'The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.  [Citation.] . . . A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.  [Citation.]' [Citation.]" (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

The relevant definition of "peace officer" is found in section 830.33, subdivision (b), which provides that "[h]arbor or port police" are peace officers if they are "regularly employed and paid in that capacity by a county, city, or district" and [first clause] "if the

---

[3] Appellant is fortunate not to have been charged with violating section 422, threatening to commit a crime that would result in death or great bodily injury.

4

primary duty of the peace officer is the enforcement of the law in or about the properties owned, operated, or administered by the harbor or port *or* [second clause] when [the officer is] performing necessary duties with respect to patrons, employees, and properties of the employing agency."[4]  (Italics added.)

Based on *People v. Miller* (2008) 164 Cal.App.4th 653 (*Miller*), appellant argues that the second clause is of no force or effect and that harbor or port police are peace officers only if their primary duty is the enforcement of the law.  Appellant asserts that, because the record contains no evidence that Officer Hubbard's primary duty was law enforcement, the conviction for battery on a peace officer must be reversed.

In *Miller* the defendant was convicted of attempting to elude a pursuing peace officer's vehicle and causing bodily injury.  (Veh. Code, § 2800.3.)  The officer testified that he was a " 'harbor patrolman' " employed by " 'the City of Long Beach Fire Department.' " (*Miller*, *supra*, 164 Cal.App.4th at p. 658.)  He worked " 'mostly . . . [as] a rescue boat operator.' "  (*Ibid.*)  "He had the authority to issue citations, detain individuals and make arrests." (*Ibid.*)

The *Miller* court concluded that the defendant's conviction had to be reversed because "the jury could not conclude beyond a reasonable doubt that [the officer] was primarily engaged in the enforcement of the law" and was therefore a peace officer.  (*Miller*, *supra*, 164 Cal.App.4th at p. 667.)  The court noted: "In its brief, [the People did] not dispute that [the officer's] status as a peace officer depends on a finding as to his primary duties."  (*Ibid.*)  But "[a]t oral argument, [the People] contended for the first time that employees of the harbor or port police should be considered peace officers as long as they are 'regularly . . . paid in that capacity by a county, city or district' and 'performing necessary duties with respect to patrons, employees and properties of the harbor or

---

[4] The verbatim text of the statute provides that peace officers include "[h]arbor or port police regularly employed and paid in that capacity by a county, city, or district other than peace officers authorized under Section 830.1, if the primary duty of the peace officer is the enforcement of the law in or about the properties owned, operated, or administered by the harbor or port or when performing necessary duties with respect to patrons, employees, and properties of the harbor or port."  (§ 830.33, subd. (b).)

port.' " (*Id.*, at p. 667, fn. 9, quoting from the second clause of section 830.33, subd. (b).) The court rejected the People's contention. It reasoned: "Under this interpretation, the [second] clause of Penal Code section 830.33, subdivision (b) would operate to create a wholly separate category of harbor and port police employees who may be deemed peace officers without regard to whether their primary duty is enforcement of the law. This definition would bestow peace officer status on a broad category of employees who perform no law enforcement functions, and cannot be reconciled with prior decisions' strict interpretation of the provisions of Chapter 4.5 [of Title 3 of Part 2 of the Penal Code, which includes section 830.33]. [Citation.]" (*Ibid.*)

We disagree with *Miller's* interpretation of section 830.33, subdivision (b). "Our goal in construing a statute is 'to determine and give effect to the intent of the enacting legislative body.' [Citation.] ' "We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context." [Citation.] If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls.' [Citation.]" (*Holland v. Assessment Appeals Bd. No. 1* (2014) 58 Cal.4th 482, 490.)

Section 830.33, subdivision (b) is unambiguous. A harbor or port police officer qualifies as a peace officer if the requirements of the first *or* second clause are met. The first clause does not prevail over and supersede the second clause. *Miller's* interpretation "violate[s] the principle of statutory construction that 'requires us, if possible, to give effect and significance to every word and phrase of a statute. [Citation.]' [Citation.]" (*People v. Guzman* (2005) 35 Cal.4th 577, 588.) "[I]t is well settled 'that in attempting to ascertain the legislative intention effect should be given, whenever possible, to the statute as a whole and to every word and clause thereof, leaving no part of the provision useless or deprived of meaning.' [Citations.]" (*California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 18.)

We respectfully question the basis for the *Miller* court's concern that the second clause "would bestow peace officer status on a broad category of employees who perform

6

no law enforcement functions." (*Miller*, *supra*, 164 Cal.App.4th at p. 667, fn. 9.) The second clause applies only to "[h]arbor or port *police* regularly employed and paid in that capacity," i.e., their official capacity as police officers. (§ 830.33, subd. (b), italics added.) The People correctly observe that "the term 'police' necessarily connotes law enforcement functions." Thus, a person would not fall within the category of "harbor or port police" unless, like Officer Hubbard, the person performed law enforcement functions pursuant to the second clause. This is a question for the trier of fact.

Appellant does not contend that the evidence is insufficient to show that Officer Hubbard was "performing necessary duties with respect to patrons, employees, and properties of the employing agency." (§ 830.33, subd. (b).) Nor could he so contend. Hubbard was in full uniform carrying peace officer accoutrement including a firearm, taser, and baton. He was investigating a suspected trespass and theft.

*Instruction that a Harbor Patrol Officer Is a Peace Officer*

The trial court instructed the jury that, to find appellant guilty of battery on a peace officer, the People must prove that "Hubbard was a peace officer performing the duties of a Harbor Patrol Officer." It further instructed that "[a] sworn member of the Santa Barbara Harbor Patrol is a *peace officer*." (Italics in original.) Appellant argues, and the People concede, that the latter instruction was erroneous. A Santa Barbara Harbor Patrol officer qualifies as a peace officer only if the People prove the requirements of either the first *or* second clause of section 830.33, subdivision (b). Moreover, "the constitutional right to a jury trial means that 'no matter how conclusive the evidence, a trial court cannot directly inform the jury that an element of the crime charged has been established. Absent a stipulation by the defendant that an element is established or is admitted, the trial court must submit that question to the jury.' [Citations.]" (*People v. Yarbrough* (2008) 169 Cal.App.4th 303, 315.)

"The error here is harmless beyond a reasonable doubt because the jury necessarily resolved [the peace officer] issue[] against appellant[] under other instructions. [Citation.]" (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1165.) For Hubbard to qualify as a peace officer under the second clause of section 830.33, subdivision (b), the People were

7

required to prove that he had been "performing necessary duties with respect to patrons, employees, and properties of the employing agency." (*Ibid*.) The jury instruction for battery on a peace officer stated that, to find appellant guilty of this crime, the People must prove that Hubbard was "performing the duties of a Harbor Patrol Officer" and that appellant "knew, or reasonably should have known, that Rick Hubbard was a peace officer who was performing his duties." Thus, by finding appellant guilty, the jury necessarily found that Hubbard had been performing his official duties and was therefore a peace officer within the meaning of the second clause of section 830.33, subdivision (b).

*Limitation on Scope of Appellant's Closing Argument*

Appellant contends that the trial court erred by granting the People's motion to preclude him from arguing to the jury that Hubbard was not a peace officer. The court stated: "[Y]ou can't argue that . . . Officer Rick Hubbard and the other folks who work for the Harbor Patrol are not peace officers within the meaning of the law, because under the law they are designated peace officers, as I understand it." "So it's not something the jury can decide, that they're not peace officers." For the reasons discussed in the preceding part of this opinion, the trial court's ruling was erroneous.

The error is harmless beyond a reasonable doubt. If appellant had been permitted to argue that Hubbard was not a peace officer, his argument would have been limited to whether the People had proved the requirements of the first or second clause of section 830.33, subdivision (b). The trial court permitted appellant to argue that he was not guilty of battery on a peace officer because Hubbard was not "performing his lawful duty." Thus, appellant was in effect allowed to argue that Hubbard was not a peace officer within the meaning of the second clause because he was not "performing necessary duties with respect to patrons, employees, and properties of the employing agency." (§ 830.33, subd. (b).) As we have previously explained, the jury could not have convicted appellant unless it had found that Hubbard had been performing his official duties within the meaning of the second clause.

8

*Sufficiency of the Evidence/Trespass*

Appellant contends that the evidence is insufficient to support his conviction of trespass in violation of section 602, subdivision (k). This statute prohibits "[e]ntering any lands . . . for the purpose of injuring any property or property rights or with the intention of interfering with, obstructing, or injuring any lawful business or occupation carried on by the owner of the land, the owner's agent, or by the person in lawful possession." (*Ibid.*)

The jury was instructed that, to find appellant guilty of trespass, the People must prove that he entered lands belonging to another "for the purpose of injuring property rights." Substantial evidence supports the jury's finding that appellant entered the Marina with the requisite purpose. The jury could have reasonably found that appellant had acted with the purpose of injuring the City of Santa Barbara's right to exclude unauthorized persons, i.e., people who were not keycard holders and were not escorted by a keycard holder. Appellant's presence on the property interfered with the owner's and tenants' right to exclusive and undisturbed possession of the Marina. "As a general rule, landowners and tenants have a right to exclude persons from trespassing on private property; the right to exclude persons is a fundamental aspect of private property ownership. [Citation.]" (*Allred v. Harris* (1993) 14 Cal.App.4th 1386, 1390; see also *Loretto v. Teleprompter Manhattan CATV Corp.* (1982) 458 U.S. 419, 435 [102 S.Ct. 3164, 73 L.Ed.2d 868] ["The power to exclude has traditionally been considered one of the most treasured strands in an owner's bundle of property rights"].)

Were we to credit appellant's theory, he could come and go to any portion of the Marina as long as he did not interfere with, obstruct, or injure the Marina or any of the boat slip tenants. This would be an unwarranted erosion of traditional real property rights.

*Alleged Failure to Instruct on Relevant Defenses*

For the offense of attempted petty theft (§§ 664, 484, subd. (a)), appellant argues that the trial court erroneously failed to instruct sua sponte on the defenses of claim of right and mistake of fact. "The claim-of-right defense provides that a defendant's good faith belief, even if mistakenly held, that he has a right or claim to property he takes from another negates the felonious intent necessary for conviction of theft or robbery." (*People v.*

9

*Tufunga* (1999) 21 Cal.4th 935, 938.) "The mistake-of-fact defense operates to negate the requisite criminal intent or mens rea element of the crime, but applies only in limited circumstances, specifically when the defendant holds a mistaken belief in a fact or set of circumstances which, if existent or true, would render the defendant's otherwise criminal conduct lawful. [Citations.]" (*People v. Lawson* (2013) 215 Cal.App.4th 108, 111.) Appellant asserts: "There was substantial evidence that when [he] entered the Harbor and removed the hose, he had a good faith belief that he had permission to do so. Specifically, Carol Holm . . . gave appellant permission to enter the Harbor to perform work on her boat and to utilize her hose for that purpose."

If substantial evidence supported the defenses of claim of right and mistake of fact, the trial court had no duty to instruct sua sponte on these defenses because their purpose was to negate the mental element of attempted petty theft. In *People v. Anderson* (2011) 51 Cal.4th 989, 992, our Supreme Court held that "a trial court has no obligation to provide a sua sponte instruction on accident where . . . the defendant's theory of accident is an attempt to negate the intent element of the charged crime." "[A]s explained in *Anderson,* the trial court's sua sponte instructional duties do not apply to defenses that serve only to negate the mental state element of the charged offense when the jury is properly instructed on the mental state element, even when substantial evidence supports the defense and it is consistent with the defendant's theory of the case. [Citation.] In these circumstances, the court's duty to instruct, 'extend[s] no further than to provide an appropriate pinpoint instruction upon request by the defense.' [Citation.]" (*People v. Lawson*, *supra*, 215 Cal.App.4th at p. 119, quoting from *People v. Anderson*, *supra*, 51 Cal.4th at p. 998.) "[T]he rationale of *Anderson* is applied with equal force to the defense of mistake of fact, or any other defense [e.g., claim of right] that operates only to negate the mental state element of the crime." (*Id*., at p. 117.)

### Out-on-Bail Enhancement

The trial court found true an enhancement allegation that, when appellant committed the felony offense of resisting an executive officer, he was out on bail for an earlier offense in another case. (§ 12022.1, subd. (b).) After suspending the imposition of sentence and

placing appellant on probation, the court dismissed the other case in furtherance of justice pursuant to section 1385. Appellant claims that, because of this dismissal, "[t]he sentencing enhancement should be permanently stayed." Appellant reasons that "a conviction for the criminal charge on the primary [earlier] offense is an essential prerequisite to the imposition of the 'on bail' enhancement." (*In re Ramey* (1999) 70 Cal.App.4th 508, 512.)

We agree with the People that appellant's claim "is not ripe for appellate review" because the trial court suspended the imposition of sentence and placed him on probation. Thus, appellant will not be sentenced if he successfully completes probation. If appellant's probation is revoked and the court imposes a sentence that includes a prison term for the out-on-bail enhancement, appellant may seek appellate review of the sentence. "[I]t is well settled that matters which are not ripe for adjudication should ordinarily be left to a future forum." (*People v. Ybarra* (1988) 206 Cal.App.3d 546, 550.)

*Disposition*

The judgment is affirmed.

CERTIFIED FOR PUBLICATION


YEGAN, J.

We concur:


GILBERT, P. J.


PERREN, J.


11

Brian J. Hill, Judge

Superior Court County of Santa Barbara

_____

Mark R. Feeser, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Linda C. Johnson, Supervising Deputy Attorney General, Theresa A. Patterson, Deputy Attorney General, for Plaintiff and Respondent.